## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

| | | |
|---|---|---|
| **PAIGE M. LORTIE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CAUSE NO. 1:25-cv-00178-ALT** |
| | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## OPINION AND ORDER

Plaintiff Paige M. Lortie appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (ECF 1). Because Lortie's sole argument on appeal is unpersuasive, the Commissioner's decision will be affirmed.

## I. FACTUAL AND PROCEDURAL HISTORY

Lortie applied for DIB and SSI in November 2022, alleging disability as of December 31, 2019. (ECF 6 Administrative Record ("AR") 21, 265-82).[1] Lortie's claim was denied initially and upon reconsideration. (AR 21, 95-96, 119, 130). On February 22, 2024, administrative law judge ("ALJ") Terry L. Miller conducted an administrative hearing, at which Lortie, who was represented by counsel, and a vocational expert testified. (AR 44-94). On May 1, 2024, the ALJ rendered an unfavorable decision to Lortie, concluding that she was not disabled because she could perform her past relevant work as a resident supervisor as it is generally performed at the

---

[1] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

sedentary level. (AR 36). The Appeals Council denied Lortie's request for review (AR 6-11), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

On April 15, 2025, Lortie filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). Lortie's sole argument on appeal is that the ALJ improperly evaluated the opinion of Garrett Bastin, D.O., who examined Lortie on April 22, 2023, at the request of the state agency. (ECF 11 at 5).

On the date of the Commissioner's final decision, Lortie was fifty-one years old (AR 265), had attended two years of college (AR 341), and had work experience as a resident supervisor and home health aide (AR 90-91; *see also* AR 341). Lortie alleges that she is disabled due to: bilateral carpal tunnel syndrome (CTS); spondylosis without myelopathy of lumbar region; cervical herniated discs, cervical degenerative disc, and cervical stenosis; splenomegaly; radiculopathy; syncope and collapse; and bilateral rotator cuff tears/repairs. (AR 340; ECF 11 at 1).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

*A. The Law*

Under the Act, a claimant seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also id.* §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring the ALJ to consider sequentially whether:

> (1) the claimant is presently employed [in substantial gainful activity]; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's [RFC] leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Pufahl v. Bisignano*, 142 F.4th 446, 452-53 (7th Cir. 2025) (citation omitted); *see also Sevec v. Kijakazi*, 59 F.4th 293, 298 (7th Cir. 2023); 20 C.F.R. §§ 404.1520, 416.920. "Between the third and fourth steps, the ALJ determines the claimant's [RFC], which is the claimant's maximum work capability." *Pufahl*, 142 F.4th at 453 (citations omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545(a), 416.920(e), 416.945(a). "The burden of proof is on the claimant for the first four steps." *Fetting v. Kijakazi*, 62 F.4th 332, 336 (7th Cir. 2023) (citation omitted). "At step five, the burden shifts to the [Commissioner] to show that there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Id.* (citation and internal quotation marks omitted). "If at any step a finding of disability or nondisability can be made, the Social Security Administration will not review the claim further." *Sevec*, 59 F.4th at 298 (citation and brackets omitted).

### B. The Commissioner's Final Decision

In the Commissioner's final decision, the ALJ found as a threshold matter that Lortie was insured for DIB through December 31, 2020.[2] (AR 24). At step one of the five-step sequential analysis, the ALJ determined that Lortie had not engaged in substantial gainful activity after her alleged onset date of December 31, 2019. (*Id.*). At step two, the ALJ found that Lortie had the following severe impairments:

> degenerative disc disease of the cervical spine; mild to moderate obesity; history of left wrist fracture from a falling injury, status post-surgical repair; history of right shoulder surgeries, including mini-right rotator cuff repair, arthroscopic subacromial decompression for impingement, and right shoulder arthroscopy in March 2014, and right rotator cuff repairs, biceps tenodesis, arthroscopic surgery with partial synovectomy, and tendon transfer in December 2014, with continuing degenerative changes of the right shoulder; history of left rotator cuff repair in January 2010, and left shoulder arthroscopic surgery and mini-left rotator cuff repair surgery in August / September 2010, with continuing AC degenerative joint

---

[2] Therefore, for purposes of her DIB claim, Lortie must establish that she was disabled as of that date. *See Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997) (explaining that a claimant must establish that he was disabled as of his date last insured in order to recover DIB benefits).

disease; alcohol use disorder with occasional extremity tremors; and (beginning with Title XVI period) bilateral carpal tunnel syndrome (CTS), right worse than left (20 CFR 404.1520(c) and 416.920(c)).

(*Id.*).

At step three, the ALJ concluded that Lortie did not have an impairment or combination of impairments severe enough to meet or equal a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 28). The ALJ assigned Lortie the following RFC:

> the claimant has the [RFC] capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the Title II period: only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes or scaffolds; no bilateral reaching overhead; only frequent handling and fingering with the non-dominant left upper extremity; and needs to avoid concentrated exposure to hazards, including operational control of dangerous, [moving] machinery, unprotected heights, and slippery / uneven / [moving surfaces]; for the Title XVI period: only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; never climbing ladders, ropes or scaffolds; no bilateral reaching overhead; only frequent handling and fingering bilaterally; and needs to avoid concentrated exposure to hazards, including operational control of dangerous, [moving] machinery, unprotected heights, and slippery / uneven / [moving surfaces].

(AR 29; *see also* AR 91). The ALJ determined at step four that given the foregoing RFC, Lortie could perform her past relevant work as a resident supervisor, as it is generally performed at the sedentary level. (AR 36; *see also* AR 91). Accordingly, Lortie's applications for DIB and SSI were denied. (*Id.*).

### C. Dr. Bastin's Opinion

In her sole argument on appeal, Lortie contends that the ALJ failed to properly consider the opinion of Dr. Bastin, who examined her on April 22, 2023, at the request of the state agency. (ECF 11 at 5). Lortie contends this is harmful error "because Dr. Bastin placed limitations on [Lortie's] ability to walk, stand, lift, and carry that the ALJ did not incorporate into [the] RFC." (ECF 11 at 13 (citation omitted)).

In considering medical opinion evidence, an ALJ is to assess the factors set forth in 20

C.F.R. §§ 404.1520c(c) and 416.920c(c) when determining the proper weight to apply to the

opinion. These factors are: (1) supportability; (2) consistency; (3) relationship with the claimant,

including the length, purpose, and extent of the treatment relationship, the frequency of

examinations, and the examining relationship; (4) specialization; and (5) other factors brought to

the attention of the Commissioner. 20 C.F.R. §§ 404.1520c(c), 416.920c(c); *see, e.g.*, *Etherington*

*v. Saul*, No. 1:19-CV-475-JVB-JPK, 2021 WL 414556, at *3 (N.D. Ind. Jan. 21, 2021).

"Although the ALJ must consider all of these factors, he need only explain how he considered

supportability and consistency." *Kaehr v. Saul*, No. 3:19-CV-1171-PPS, 2021 WL 321450, at *3

(N.D. Ind. Feb. 1, 2021) (citations omitted) ("[T]he factors of supportability . . . and consistency

. . . are the most important factors we consider when we determine how persuasive we find a

medical source's medical opinions or prior administrative medical findings to be." (ellipses in

original) (quoting 20 C.F.R. §§ 404.1529c(b)(2), 416.920c(a))).

 At the examination by Dr. Bastin, Lortie estimated that she could walk one block, stand

ten minutes, climb one flight of stairs, and lift ten pounds with either arm or both arms together.

(AR 1221). Her fine fingering skills, such as opening a jar, buttoning a shirt, shaking hands, and

writing with a pencil repetitively were normal, except Dr. Bastin noted Lortie could not grip or

grasp objects due to CTS. (AR 1222). Her cardiac status was normal, and she did not use an

assistive device. (AR 1223-25). She had normal gait and station, though she declined to squat

and perform heel, toe, and tandem walking, stating she "feels unstable" when performing these

maneuvers. (AR 1225). Her posture and ability to get on and off the table were normal, but a

straight leg raise test was abnormal in sitting and supine. (AR 1226). Her muscle strength,

sensation, ability to pinch, grasp, and manipulate were normal, but she had some decreased range

of motion in her cervical spine and shoulders bilaterally. (AR 1227-28). Dr. Bastin indicated that

Lortie could stand or walk for at least two hours in an eight-hour period, but he did not think she

"could use the unoccupied upper extremity for lifting/carrying less than 10 pounds frequently or over 10 pounds occasionally[.]" (*Id.*).

The ALJ penned an entire paragraph on Dr. Bastin's findings, summarizing them in detail. (AR 33).[3] Yet, the ALJ did not find Dr. Bastin's opinion persuasive, explaining as follows:

> Dr. Bastin did not include any formal restrictions along with his examination report of the claimant, though he did include two statements, noting the claimant was able to stand or walk for at least two hours in an eight-hour workday, but stated that the claimant would not be able to use the []unoccupied upper extremity for lifting and carrying less than 10 lbs. frequently or over 10 lbs. occasionally (Exhibit 10F/8). The undersigned does not find this assessment persuasive. While it is supported by Dr. Bastin's own examination of the claimant, it is not consistent with the medical findings. The claimant does have documented evidence of cervical degeneration and bilateral shoulder arthritis, as well as bilateral CTS, which warrant the need for exertional restrictions. However, Dr. Bastin's statements suggest the claimant should be at the sedentary exertional level, and the medical record, which shows the claimant as having largely intact strength and neurological functioning, even with her impairments (Exhibits 10F & 13F/63-65), do not support the claimant as being so limited as to be placed at the sedentary level. Accordingly, the undersigned does not find the opinion persuasive.

(AR 34-35).

---

[3] The ALJ mentioned Dr. Bastin's findings again later in her decision when assessing Lortie's RFC, stating:

> [T]he evidence supports the claimant's functioning has been greater than she attests to, and that she has responded well to treatment, including conservative treatment. The claimant endorsed that her left wrist, following surgery, improved considerably only weeks after her surgery occurred (Exhibit 6F/29-31). The claimant has been treated for cervical degeneration and bilateral shoulder arthritis and rotator cuff injuries, but she has shown mostly intact strength and shoulder range of motion (Exhibit 6F/22-25). She has been treated with neuropathic pain medication for her alleged pain symptoms (Exhibit 6F/5-8), in addition to injections to the wrist and shoulders, to relie[ve] her complaints of shoulder arthritis and bilateral CTS (Exhibit 6F/1-4). The examination with Dr. Bastin showed the claimant to ambulate normally, with intact grip strength and dexterity, and only some mildly decreased cervical and shoulder range of motion (Exhibit 10F), and she has continued to show no significant neurological deficits into the present day (Exhibit 16F/26-29). Nonetheless, given the claimant's evidence of a recurrent left shoulder rotator cuff tear (Exhibit 11F/6-7), as well as bilateral CTS (Exhibit 6F/1-4), and bilateral shoulder arthritis (Exhibit 11F/15), the undersigned has limited the claimant to light exertional work, with additional postural, manipulative, and environmental restrictions to accommodate her musculoskeletal impairments. These limitations are more than sufficient to address her impairments, with the medical evidence supporting she would be capable of completing the RFC within these parameters.

(AR 35).

Lortie now contends that the ALJ's assessment of Dr. Bastin's opinion does not adequately address the necessary supportability and consistency factors in accordance with 20 C.F.R. §§ 404.1520c(c) and 416.920c(c). (ECF 11 at 6-9). First, Lortie argues that the ALJ's statement that the opinion is supported by Dr. Bastin's own examination of Lortie miscomprehends what supportability means, as the ALJ "fails to address whether or not the objective evidence supports or fails to support the medical opinion." (*Id.* at 7 (citation omitted)); *see Annett C. v O'Malley*, No. 4:23-cv-00094-KMB-TWP, 2024 WL 4234050, at *4 (S.D. Ind. Sept. 19, 2024) ("The supportability factor focuses on what the source brought forth to support his or her findings. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinion(s) . . . will be." (alterations in original) (citations and internal quotation marks omitted)); 20 C.F.R. §§ 404.1513, 416.913 ("Objective medical evidence is medical signs, laboratory findings, or both . . . ."). But in discussing Dr. Bastin's opinion, the ALJ considered that Lortie had "documented evidence" of cervical degeneration and bilateral shoulder arthritis, as well as carpal tunnel syndrome, and "largely intact strength and neurological functioning . . . ." (AR 34). In any event, Lortie makes no effort to specify what objective medical evidence from Dr. Bastin's examination the ALJ should have discussed but did not, that could have materially affected the outcome of the ALJ's analysis. (*See* ECF 11 at 7-8). "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) (collecting cases).

Lortie also contends that the ALJ failed to adequately consider the consistency factor when assessing Dr. Bastin's opinion. (ECF 11 at 8-14). The ALJ found Dr. Bastin's opinion "not consistent with the medical findings[,]" noting that while Lortie had cervical degeneration,

shoulder arthritis, and CTS, the medical record documenting "largely intact strength and neurological functioning" did not support sedentary-level limitations. (AR 34-35). Lortie contends the ALJ's consideration of the consistency factor is flawed because the ALJ (1) applied an incorrect standard, (2) essentially contradicted himself, and (3) failed to build an accurate and logical bridge between the evidence and his conclusion. (ECF 11 at 9).

As to the first of these arguments, Lortie asserts that the ALJ applied an incorrect standard because he cited Dr. Bastin's own opinion when discussing consistency, rather than evidence or opinions from other medical sources. (*Id.*; *see* AR 34 (citing "Exhibits 10F & 13F/63-65)). The relevant regulations provide: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. 404.1520c(c)(2), 416.920c(c)(2). As such, Lortie argues that the ALJ erred by failing to perform an "*external* check by evaluating evidence from *other* medical sources." (ECF 11 at 9)*.* Specifically, Lortie argues that the ALJ should have discussed whether Dr. Bastin's opinion regarding Lortie's walking, standing, lifting, and carrying abilities was consistent with other medical evidence of record, rather than "subjectively translat[ing] Dr. Bastin's limitations into a sedentary exertional limitation finding and then shifting the analysis to whether or not the medical evidence is consistent with a sedentary exertional limitation." (*Id.* at 9-10). Lortie emphasizes that Dr. Bastin did not actually limit her to sedentary work, as Dr. Bastin did "not address [Lortie's] ability to sit for six hours of an eight-hour workday nor her capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions." (*Id.* at 10).

Lortie's argument merely nitpicks the ALJ's decision. *See Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) ("In analyzing an ALJ's opinion for . . . fatal gaps or contradictions, we given the opinion a commonsensical reading rather than nitpicking at it." (citation omitted)).

There are no limitations in any medical opinion of record indicating that Lortie is unable to sit for six hours in an eight-hour workday. Nor are there limitations from a medical opinion indicating that Lortie has the mental inability to perform simple work. "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citations omitted).

Lortie next argues that the ALJ contradicted himself by finding Dr. Bastin's opinion not consistent with the medical findings and then acknowledging that "documented evidence of cervical degeneration and bilateral shoulder arthritis, as well as bilateral [carpal tunnel syndrome], . . . warrant the need for exertional restrictions." (AR 34). However, it is unclear what error or distinction Lortie is attempting to assert here. The ALJ made it quite clear that he did not believe a two-hour restriction on walking and standing was consistent with the other medical evidence, but that the record did support some upper extremity limitations. This conclusion is reasonable based on the record.

Lortie further argues that the ALJ's citation to a November 14, 2022, treatment note written by James Beitzel, M.D., a family practitioner, noting a three-month history of right hip sciatic pain was also contradictory to the ALJ's reasoning. (ECF 11 at 11 (citing AR 1795-97)). Lortie told Dr. Beitzel that she was unable to sit or stand for long periods of time due to her hip pain (AR 1795), which Lortie claims is "consistent with Dr. Bastin's walk/stand limitation." (ECF 11 at 12). But Dr. Beitzel did not assign Lortie any standing or walking limitations in his November 14, 2022, treatment note, and as the ALJ noted, Dr. Beitzel found no neurological deficits. (AR 26, 34, 1796-97). Dr. Beitzel referred Lortie to physical therapy, prescribed medication, ordered an MRI, and recommended she return "for any new symptoms [and] revaluation if not improving with this treatment." (AR 1796). Lortie does not point to any follow-up care of record by Dr. Beitzel, and a note six months later states that the MRI revealed

"[m]inimal arthritis of the lumbar spine with no nerve impingement[]" and a recommendation for "physical therapy if symptoms persist." (AR 1776; *see* AR 26).

Finally, Lortie contends the ALJ's consistency assessment "failed to build an accurate and logical bridge between the evidence and his conclusion that the medical records are inconsistent with Dr. Bastin's opinion regarding [Lortie's] ability to walk, stand, lift, and carry." (ECF 11 at 12). Lortie seizes the ALJ's reference to "largely intact strength and neurological functioning" (AR 34), asserting that this evidence fails to provide the essential logical bridge connection and emphasizing that her walking and standing limitations are musculoskeletal in nature, as demonstrated by her abnormal straight leg raise test. (ECF 11 at 13 (citing AR 1226)). Indeed, Lortie's point has some merit, "as several courts in this circuit have acknowledged, even full muscle strength is consistent with impairments that cause pain and thereby affect a claimant's functional limitations, including limited abilities to stand or walk." *Otis S. v. Saul*, No. 1:18-CV-372-WCL-JPK, 2019 WL 7669923, at *3 (N.D. Ind. Dec. 19, 2019) (collecting cases).

Yet, despite this potential misstep, the ALJ still built an accurate and logical bridge from Dr. Bastin's limitations to the ALJ's conclusion that Lortie could perform light-exertional work, noting that no other medical opinion of record limited Lortie to standing or walking just two hours in an eight-hour workday. In doing so, the ALJ largely relied on the opinions of J.V. Corcoran, M.D., and J. Sands, M.D., state agency physicians who reviewed Lortie's record in May and October 2023, respectively, and concluded that Lortie could lift ten pounds frequently and twenty pounds occasionally, stand or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, frequently balance, and occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. (AR 34, 114-15, 125-27).

11

And even if the ALJ had limited Lortie to just two hours of standing or walking in an eight-hour workday in the RFC, this would not change the outcome here. While the ALJ assigned an RFC at the light-exertional level, which requires at least six hours of standing or walking in an eight-hour workday, the ALJ concluded at step four that Lortie could perform her past relevant work as a resident supervisor, "as it is generally performed *at the sedentary level*." (AR 36 (emphasis added)). "If someone can do light work, . . . he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b); 416.967(b); *see Dickman v. Astrue*, No. 08-C-898, 2009 WL 1107807, at *6 (E.D. Wis. Apr. 23, 2009) (citing SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) ("[T]he primary difference between sedentary work and light work is that light work involves a good deal of walking and standing, while sedentary work requires only occasional walking and standing.") (internal quotation marks omitted)). Thus, in the end, Dr. Bastin's walking and standing limitations do not make a material difference in this case. Consequently, the ALJ's decision will be affirmed. *See Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (The Court "will not remand a case for further specification when we are convinced that the ALJ will reach the same result." (citation omitted)).

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Lortie.

SO ORDERED.

Entered this 15th day of December 2025.

/s/ Andrew L. Teel
Andrew L. Teel
United States Magistrate Judge